UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA B.,[1] | ) |
| | ) No. 20 CV 6757 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) July 12, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Theresa B. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting that various mental health conditions prevent her from working. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying in part her applications for benefits. Before the court are cross motions for summary judgment. For the following reasons, Theresa's motion is granted, and the government's is denied:

**Procedural History**

Theresa filed DIB and SSI applications in September 2015 alleging disability onset as of June 7, 2014. (Administrative Record ("A.R.") 177-86.) After her applications were denied initially and upon reconsideration at the administrative level, (id. at 117-19, 129-31), she sought and was granted a hearing before an

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Theresa's first name and last initial in this opinion to protect her privacy to the extent possible.

Administrative Law Judge ("ALJ"), (id. at 132-33, 150-55). Theresa appeared at the December 2017 hearing, and she and a vocational expert ("VE") testified. (Id. at 34-67.) The ALJ concluded in October 2018 that Theresa was not disabled. (Id. at 13-33.) The Appeals Council denied Theresa's request for review. (Id. at 1-6.) Theresa then sought judicial review, and at the parties' request, the court remanded her case for another hearing before the ALJ. (Id. at 720-33.)

The second hearing took place in June 2020. Theresa appeared with an attorney this time, and she, a medical expert ("ME"), and a VE testified. (Id. at 679-719.) The ALJ again denied her DIB claim but granted her SSI claim in part. The ALJ determined that Theresa was disabled beginning on May 28, 2019—the date she started treatment with psychiatrist Dr. Marina Smirnov—because she suffered marked limitations in interacting with others and in concentrating, persisting, or maintaining pace ("CPP") and met listing 12.04. (Id. at 646-70.) But the ALJ concluded that Theresa was not disabled before then and did not have a medically determinable impairment from the claimed onset date of June 7, 2014, to July 23, 2015. (Id. at 649-50.) While the ALJ found that Theresa suffered from the severe impairments of bipolar disorder, major depressive disorder, generalized anxiety disorder, and PTSD from July 24, 2015 (when she was first hospitalized for suicidal ideations following her daughter's March 2015 suicide) through May 27, 2019 (the day before she began treatment with Dr. Smirnov), the ALJ concluded that for the same period she was at most moderately limited in the paragraph B criteria and could

perform other work, (id. at 665-66, 669). Theresa again sought judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 8).

## Analysis

Theresa argues that in setting her disability onset date as May 28, 2019, the ALJ: (1) failed to follow regulatory guidance; (2) mischaracterized the opinions of the ME and Dr. Smirnov; and (3) improperly analyzed her subjective symptoms. (See generally R. 18, Pl.'s Mem.; R. 25, Pl.'s Reply.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and substantial evidence supports the decision, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). But the ALJ must also "provide a 'logical bridge' between the evidence and [her] conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), supplying enough detail to "enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the arguments and the record under these standards, the court concludes that remand is required.

At the outset, Theresa incorrectly argues that Social Security Ruling ("SSR") 18-01p directed the ALJ to treat the March 2015 date of her daughter's suicide as

3

Theresa's disability onset date.[2] (R. 18, Pl.'s Mem. at 4-6.) Among other things, SSR 18-01p clarifies how an ALJ determines the established onset date ("EOD") for a claimant who suffers an impairment because of a traumatic event, providing that the date of the traumatic event can be the EOD only if the record "supports . . . that the claimant met the statutory definition of disability" at that time. SSR 18-01p, 2018 WL 4945639, at *2 (Oct. 2, 2018). As such, SSR 18-01p does not mandate that the date of the traumatic event automatically becomes her disability onset date.

That said, the ALJ still must evaluate when Theresa met the statutory definition of disability, and the parties dispute whether she did so. On the one hand, the government argues that the ALJ reasonably relied on Dr. Smirnov's and the ME's "suggest[ions] that [Theresa] became disabled as of May 28, 2019" in selecting that date. (R. 22, Govt.'s Resp. at 9.) On the other hand, Theresa points out that neither Dr. Smirnov nor the ME—whose opinion the ALJ gave great weight—opined that she was not disabled before then and argues that the ALJ mischaracterized their opinions when suggesting otherwise. (R. 18, Pl.'s Mem. at 5-6; R. 25, Pl.'s Reply at 1-2.) The court agrees. Indeed, both Dr. Smirnov and the ME acknowledged Theresa's mental health history and that her symptoms started before she began treatment with Dr. Smirnov. (A.R. 944-46 (Dr. Smirnov's May 2020 residual functional capacity ("RFC") questionnaire indicating that Theresa had a "medically documented history of a chronic organic mental . . . or affective disorder of at least 2 years' duration," and

---

[2] Theresa appears to have abandoned any argument that she was disabled prior to her daughter's death.

that "all her symptoms revolve around daughter's death" and "started in 2014"); see also id. at 696-97 (ME testimony that Theresa was "markedly impaired" "at least from the time that she saw Dr. Smirnov").) Further, the ME acknowledged that nothing between Theresa's daughter's death and May 2019 would have caused her to "regress drastically." (Id. at 702.) Instead, it seems Dr. Smirnov supplied, and the ME and ALJ relied on, the May 28, 2019 date simply because that is when Dr. Smirnov began treating Theresa.

The ALJ (and the ME) also pointed to the relative lack of medical evidence prior to that date and Theresa's failure to obtain psychotherapy as reasons for selecting the May 2019 date. (Id. at 661 (ALJ's description of Theresa's treatment as "very limited" and finding that she "declined psychotherapy without providing a reason"), 702-04 (ME's testimony that medical records were "kind of spotty," Theresa "quit medication management . . . for a considerable period of time," and did not demonstrate "consistency" in seeking therapy).) But there are at least two problems with this rationale. First, the ALJ all but ignored Theresa's explanations for not seeking therapy, despite being directed to examine them on remand. (See id. at 736 (Dec. 2019 Appeals Council order stating that "adequate consideration for the claimant's reasons for not seeking mental health therapy is warranted" on remand); see also id. at 655, 661 (ALJ's summary of Theresa's June 2020 hearing testimony, including that she "does not see a therapist or counselor because they bring up stuff from her past," but discounting symptom allegations in part because Theresa "declined psychotherapy without providing a reason"). Generally, an ALJ's symptom

5

evaluation will not be disturbed if it is based on specific findings and evidence and not "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But an ALJ may not hold a claimant's failure to obtain treatment against her "without considering possible reasons . . . she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

The record reflects that Theresa offered several explanations for not seeking psychotherapy and for her otherwise relatively limited treatment. (See, e.g., A.R. 55 (she kept feelings to herself because "you have to watch what you say" to "certain people" because "one time I was telling someone I just needed to talk to my psychiatrist and all of a sudden the police were at my door and they locked me up . . . in a mental [hospital]"), 689 (there was a break from treatment because her male doctor was "like a pervert" and it took "a long time" to fulfill her subsequent request for a female therapist), 886 (Dr. Smirnov's May 2019 diagnostic evaluation reflecting that Theresa did not "want to expose her feeling[s] in therapy").) The ALJ's failure to consider those reasons or that mental illness itself may have prevented her from obtaining treatment was error. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (holding that ALJs must consider that "mental illness in general . . . may prevent the sufferer from . . . submitting to treatment").

Second, the ALJ failed to acknowledge Theresa's December 2017 hearing testimony concerning her symptoms and functioning, while seemingly holding against her that her testimony at the June 2020 hearing was mostly indicative of

6

current, not earlier, functioning. (See A.R. 661.) In fact, it is unclear not only whether the ALJ considered the December 2017 testimony before issuing her July 2020 decision, but also whether the ME—on whose opinion the ALJ greatly relied—even had access to it. (See id. at 646-70 (July 2020 ALJ decision summarizing only June 2020 hearing testimony and repeatedly referencing singular "hearing"), 671-77 (July 2020 exhibit list to ALJ decision with no reference to December 2017 hearing).) Theresa's December 2017 testimony indicates that she: "couldn't handle the public anymore" and did not have friends, (id. at 50, 53); sometimes did not leave her home "for months," (id. at 55); felt "like chopping someone's head up" or "a cat's head off," and is a "danger to society," (id. at 54-55); hallucinated and believed that "people" made her daughter hang herself, (id. at 51, 59-60); and could not concentrate sufficiently to drive or follow a television program or book without watching or reading it "over and over again," (id. at 57-58).

Because the ALJ failed to discuss this testimony and largely relied on the opinion of an ME who may not have considered it, this court "has no idea what the ALJ thought about this evidence."[3] *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Zblewski v. Shweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (finding error because the court "cannot tell if significant probative evidence was not credited or simply ignored"). By overlooking evidence tending to support an earlier onset date, the ALJ

---

[3] The ALJ herself acknowledged the importance of a claimant's hearing testimony in discounting other opinion evidence because the physician could not consider it. (A.R. 664 (giving "little weight" to state agency psychologist because she was "not in a position to . . . listen to the claimant's testimony")).

engaged in impermissible cherry-picking and, as such, the onset date selected is arbitrary. *See Rohan v. Barnhart*, 306 F. Supp. 2d 756, 767-68 (N.D. Ill. 2004) (reversing onset date determination as arbitrary where based solely on date of diagnosis); *see also McCall v. Astrue*, No. 05 CV 2042, 2008 WL 5378121, at *18 (S.D.N.Y. Dec. 23, 2008) (noting that date "claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing" all were arbitrary dates that required remand). And because Theresa's testimony may support a more restrictive RFC—if not a marked limitation in the paragraph B criteria of interacting with others and/or CPP—for at least some portion of the period at issue, the court cannot conclude that the error was harmless.[4]

Finally, Theresa argues that the ALJ erred when she discounted her subjective symptom allegations as inconsistent with her daily activities. (R. 18, Pl.'s Mem. at 10-11; R. 25, Pl.'s Reply at 5-6.) Daily activities must generally be considered "with care," *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), because a claimant's "ability to struggle through" them "does not mean that she can manage the requirements of

---

[4] The ALJ appeared to have lapses in logic concerning the paragraph B criteria for the period at issue, including because the ALJ found that Theresa was only moderately limited in CPP and mildly limited in adapting or managing herself in part because she "cared for her grandchildren." (A.R. 652.) A closer look at the record, however, reveals that Theresa did not care for her grandchildren, but rather that her grandchildren were important to her, and that she was motivated to improve her mental health in order to see them again. (See, e.g., id. at 513 (Nov. 2015 note by psychiatrist Dr. Maja Mircic indicating that Theresa's "grandchildren are reason for her to go on" even though her son-in-law "does not let her see [them]"), 519 (Dec. 2015 note by Dr. Mircic indicating that Theresa "is in contact with her grandchildren through facebook" but "is hoping things can settle down and that she will be in contact with [them] more soon"), 45 (Theresa's Dec. 2017 hearing testimony that she does not babysit her grandchildren because her son-in-law "won't let [her] see them").)

a modern workplace," *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). Here, the ALJ did not equate Theresa's activities with the ability to work full time. But the court agrees with Theresa that in relying on her activities to discount her allegations, the ALJ again fell impermissibly short on explanation. (See A.R. 661 (July 2020 decision asserting that Theresa's ability to live alone, bathe and dress independently, prepare meals, grocery shop, and use Facebook was "to some extent inconsistent with the greater limitations she reports").) *See Gonzalez v. Colvin*, No. 12 CV 10262, 2014 WL 4627833, at *5 (N.D. Ill. Sept. 16, 2014) (holding that ALJ erred in failing to explain why claimant's pain allegations were inconsistent with her limited activities). At bottom, Theresa is entitled to a better-reasoned decision that properly ties the evidence to the outcome.

## Conclusion

For the foregoing reasons, Theresa's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

                      **ENTER:**

                      */s/ Young B. Kim*
                      **Young B. Kim**
                      **United States Magistrate Judge**